**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRIC OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIE MITCHELL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 1:22-cv-04749 |
| v. | ) ) | Hon. Joan B. Gottschall |
| | ) | |
| CREDIT SOLUTIONS, LLC; and SYNCHRONY FINANCIAL, | ) ) ) | Hon. Mag. Heather K. McShain |
| | ) ) | |
| Defendants. | ) | |

## AMENDED CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Willie Mitchell, on behalf of himself and all others similarly situated, by and through his undersigned counsel, and files this Amended Class Action Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") against Credit Solutions, LLC ("Credit Solutions"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA") against Synchrony Financial ("Synchrony," and together with Credit Solutions, the "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.     The FDCPA is a broad, remedial statute that prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts.

2.     In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

1

debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

3.       Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

4.       To this end, the FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

5.       Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F. Supp. 2d 1035, 1042 (N.D. Ill. 2008).

6.       Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. § 1692 *et seq*.

7.       ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002).

8.       ICFA provides redress for conduct that is either deceptive or unfair. *Id.* at 417.

9.     ICFA "is to be liberally construed to effectuate its purpose." *Id.*

10.    Plaintiff seeks a remedy for unfair conduct by Synchrony in connection with Synchrony's practice of using its agents to arrange payment plans through retained debt collectors and then unilaterally and without cause cancelling those arrangements to the detriment of the consumer, including Plaintiff.

## JURISDICTION AND VENUE

11.    This This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as this case is brought pursuant to the FDCPA.

12.    "An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added).

13.    Defendants collects debts from consumers in Illinois.

14.    Personal jurisdiction and venue are proper in this district as Plaintiff resides in this District, both Defendants conducted business with Plaintiff in this District, Credit Solutions attempted to collect a consumer debt from Plaintiff in this District.

## PARTIES

15.    Plaintiff is a resident of the State of Illinois, from whom Credit Solutions attempted to collect a consumer debt owed for an allegedly defaulted account with Synchrony.

16.    Plaintiff is a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

17.    Defendant Credit Solutions, LLC is a Kentucky limited liability company that does or transacts business in Illinois. Its registered agent is Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

18.    Credit Solutions is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

19.    Credit Solutions regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6)SA of the FDCPA.

20.    Defendant Synchrony Financial is a Delaware Corporation that does in Illinois. Its registered agent is The Corporation Trust Company, location at 1209 Orange Street, Wilmington, Delaware 19801.

## FACTUAL ALLEGATIONS

21.    According to Defendants, Plaintiff incurred a debt to Allegro Credit (the "Account").

22.    Plaintiff incurred the Account primarily for personal, family, and household purposes.

23.    On or about January 26, 2021, Synchrony acquired Allegro Credit, which Synchrony described as a "leading provider of point-of-sale consumer financing for audiology products, dental services and musical instruments."

24.    As part of the transaction between Synchrony and Allegro Credit, Synchrony acquired the rights in the Account.

25.    The Account is a "debt" as that term is defined at § 1692a(5) of the FDCPA.

26.     Plaintiff suffered temporary financial difficulties and was not able to pay the Account and the Account went into default.

27.     Synchrony subsequently retained Credit Solutions to collect the Account.

28.     Credit Solutions used the mails and phones to attempt to collect the Account from Plaintiff.

29.     In August of 2021, Plaintiff made a payment arrangement regarding the Account with Credit Solutions.

30.     The arrangement provided for Plaintiff to make discounted regular monthly payments from August 2021 through October 2023 in exchange for Synchrony and Credit Solutions to agree to accept a discounted balance, to forbear their right to pursue immediate collection of the Account, to refrain from reporting the Account as delinquent to the credit reporting agencies, to cease charging interest on the Account, and to cease other collection efforts on the Account (the "Arrangement").

31.     Plaintiff was experiencing financial hardship, and he chose to enter into the Arrangement and pay the Account instead of paying other debts based on Credit Solutions' representations and based Synchrony's representations through its agent, Credit Solutions, that the Agreement would be honored by Synchrony.

32.     Credit Solutions was acting under the direction and control of Synchrony.

33.     Credit Solutions would not have made the Arrangement without the permission of Synchrony.

34.     Synchrony authorized Credit Solutions to enter into the Arrangement with Plaintiff.

35.     On August 25, 2021, Plaintiff made a $50.00 payment to Credit Solutions under the Arrangement.

5

36.     On September 25, 2021, Plaintiff made a $100.00 payment to Credit Solutions under the Arrangement.

37.     On November 25, 2021 and December 25, 2021, Plaintiff made a $106.40 payment to Credit Solutions under the Arrangement.

38.     From January 25, 2022 through March 25, 2022, Plaintiff made monthly payments of $106.41 to Credit Solutions under the Arrangement.

39.     Synchrony received and accepted the benefit of each of the above-described payments.

40.     At some point in March 2022, Synchrony ended its relationship with Credit Solutions.

41.     As a result of the termination of the relationship, Synchrony ordered Credit Solutions to unilaterally terminate its payment arrangements, such as the Arrangement, with consumers, including Plaintiff.

42.     On or about March 22, 2022, Credit Solutions, at the direction of Synchrony, sent Plaintiff a letter in an effort to collect the account from Plaintiff (the "Letter"). (Exhibit A).

43.     The Letter conveyed information about the Account, including an account number, the identity of the creditor, and an account balance.

44.     Thus, the Letter was a communication as that term is defined in §1692a (2) of the FDCPA.

45.     Plaintiff read the Letter.

46.     The Letter stated in pertinent part,

> Credit Solutions LLC is writing to inform you that as of March 21, 2022, we will no longer be servicing your Synchrony regarding Allegro Credit account. After March 21, 2022, you will need to contact Synchrony

> regarding Allegro Credit…to discuss your account or to make repayment arrangements.
>
> All secured payment arrangements in place with Credit Solutions will be honored through July 18, 2022, as agreed.

(Exhibit A).

47.     Plaintiff had been making payments for eight months prior to receiving the Letter.

48.     While the Letter states, "Credit Solutions is no longer servicing Plaintiff's account as of March 2022 but will continue taking payments until July 2022", Credit Solutions website shows they are planning to take payments through 2023.

49.     Plaintiff was confused, as would the unsophisticated consumer, as to why Credit Solutions was continuing to take payments if they were not servicing the Account.

50.     Plaintiff entered into the Arrangement to maintain good standing on the Account, to protect his credit and to avoid the potential legal repercussions streaming from not paying the Account.

51.     By ending the Arrangement and turning the Account back over to Synchrony, Plaintiff was no longer in good standing as of March 2022.

52.     Had Plaintiff known the Arrangement was going to be cancelled, and that he would no longer be in good standing, he would not have entered into the Arrangement.

53.     15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .**

54.     Credit Solutions threatened to take an action it could not take when it threatened to take payments from Plaintiff when it was no longer servicing the Account, in violation of 15 U.S.C. §1692e(5).

55.     The unsophisticated consumer would believe that Credit Solutions was threatening to continue taking payments from Plaintiff even though it was no longer servicing the Account.

56.     Violations of the FDCPA which would influence a consumer's decision to pay a debt are material. *Boucher v. Fin. Sys. of Green Bay, Inc.*, No. 17-2308, 2018 WL 443885, at *2 (7th Cir. Jan. 17, 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009)).

57.     15 U.S.C. § 1692f of the FDCPA provides as follows:

> **Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.**

58.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f, when it entered into a payment arrangement with Plaintiff and then proceeded to cancel the arrangement.

59.     Moreover, in the eight months Plaintiff made payments according to the Arrangement, Credit Solutions did not send notice prior to withdrawing the payments.

60.     15 U.S.C. § 1692f of the FDCPA provides as follows:

> **Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **…(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit**

8

> **such check or instrument not more than ten nor less than three business days prior to such deposit.**

61.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f(2), when it failed to provide Plaintiff with notice prior to withdrawing payments.

62.     Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard.  *See, Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

63.     Synchrony caused Credit Solutions to send Plaintiff the Letter notifying him that his Arrangement was terminated unilaterally.

64.     Synchrony caused Credit Solutions to send Plaintiff the Letter that falsely claimed Credit Solutions was permitted to unilaterally terminate the Arrangement.

65.     Synchrony caused Credit Solutions to send Plaintiff the Letter that failed to inform his rights under the Arrangement.

66.     Synchrony caused Credit Solutions to unilaterally terminate the Arrangement between Plaintiff and Credit Solutions.

67.     Synchrony failed to cause Credit Solutions to provide sufficient information regarding the termination of the Arrangement, and did not provide a method by which the Arrangement would continue to be offered to Plaintiff.

68.     Synchrony did not replace the Arrangement with Plaintiff.

69.     Synchrony did not cause any other payment processor or debt collector to replace the Arrangement with Plaintiff.

70.     Plaintiff simply caused Credit Solutions to unilaterally terminate the Arrangement and stop accepting payments causing a default on the Account.

71.     Synchrony did not offer Plaintiff a new arrangement on the same terms as the Arrangement.

72.     After Synchrony fired Credit Solutions, Credit Solutions, at the instruction of Synchrony, refused to accept payments or to honor the Arrangement.

73.     After Synchrony fired Credit Solutions, Credit Solutions, at the instruction of Synchrony, ceased withdrawing Plaintiff's monthly payment pursuant to the Arrangement.

74.     As a direct and proximate result of Synchrony's conduct, Plaintiff's Arrangement was terminated.

75.     As a direct and proximate result of Synchrony's conduct, Plaintiff's Account is in default.

76.     As a direct and proximate result of Synchrony's conduct, Plaintiff is subject to the precise intrusions Plaintiff sought to avoid by entering into the Arrangement.

77.     As a direct and proximate result of Synchrony's conduct, Plaintiff is subject to collection action by Synchrony and other debt collectors, negative credit reporting to the credit reporting bureaus, additional interest being charged to his account, endless calls and harassment from other debt collectors and legal action.

78.     As of the date of the filing of this Amended Complaint, Synchrony has not offered or arranged to reinstate the Arrangement.

## **CLASS ALLEGATIONS**

79.     Plaintiff Willie Mitchell, brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) who entered into a payment arrangement with Credit Solutions for a Synchrony account (3) who then received a letter substantially similar to that attached as Exhibit A, which states "We will no longer be servicing your Synchrony Allegro

Credit Account" (4) sent between one year prior to the filing of this Complaint up to the filing of this Complaint (the "<u>Class</u>").

80.  Plaintiff may alter the class definition to conform to developments in the case and discovery.

81.  The proposed class meets all requirements under 735 ILCS 5/2-801.

82.  **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of members of the Class is presently unknown and can only be ascertained through discovery because that information is exclusively in the possession of Defendant.  However, it is reasonable to infer that more than 40 Illinois consumers received a letter materially identical to Exhibit A hereto given that it is a form letter.  Members of the Class can be easily identified through Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

83.  **Commonality and Predominance:** Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

84.  **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent, and he intends to prosecute this action vigorously.  Plaintiff has retained counsel competent and experienced in class action litigation.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel and Plaintiff's claim is typical of the claims of the Class members.

85.     **Superiority:** A class action in this case would be superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Credit Solutions, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the judicial system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I—FAIR DEBT COLLECTION PRACTICES ACT—CLASS CLAIM— CREDIT SOLUTIONS, LLC

86.     Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

87.     Credit Solutions threatened to take an action it could not take when it threatened to take payments from Plaintiff when it was no longer servicing the account, in violation of 15 U.S.C. §1692e(5).

88.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f, when it entered into a payment arrangement with Plaintiff and then proceeded to cancel the arrangement.

89.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f(2), when it failed to provide Plaintiff with written notice prior to withdrawing payments.

WHEREFORE, Plaintiff asks for an award in his favor and against Credit Control as follows:

A.      Certification of the proposed Class;

B.      Designation of Plaintiff as representative of the proposed Class and designation of Plaintiff's counsel as Class counsel;

C.      Statutory damages pursuant to 15 U.S.C. § 1692a(2);

D.      Attorney's fees, litigation expenses and costs of suit pursuant to 15 U.S.C § 1692k(a)(3); and

E.      Such other or further relief as the Court deems proper.

## COUNT II—ILLINOIS CONSUMER FRAUD ACT—INDIVIDUAL CLAIM— SYNCHRONY FINANCIAL

90.     Plaintiff re-alleges above paragraphs as if set forth fully in this count

91.     Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

92.     Synchrony is a "person" as defined under Section 1(e) of ICFA.

93.     Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

94.     Synchrony violated Section 2 of ICFA by engaging in unfair or deceptive acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

95.     ICFA prohibits any unfair acts or practices in the course of trade or commerce. 815 ILCS § 505/2.

13

96.     ICFA defines "merchandise" to include services, and not just tangible goods or real estate.

97.     Plaintiff opened an account with Allegro Credit, which was subsequently acquired by Synchrony Financial, a financial institution.

98.     Plaintiff is in privity with Synchrony.

99.     Plaintiff was a resident of Illinois at all times relevant to this complaint.

100.    At all times relevant hereto, Synchrony was providing account servicing services and credit services to Plaintiff.

101.    Synchrony's misconduct threatens the rights of residents throughout Illinois.

102.    At all times relevant, Synchrony was engaged in trade or commerce in the state, servicing consumer accounts to residents of Illinois.

103.    While engaged in trade or commerce, Synchrony committed deceptive and unfair acts as set forth below. These acts were carried out without legal or factual basis, in direct contravention of Illinois law, and in violation of federal law.

104.    It was deceptive for Synchrony to:

- Authorize its debt collectors to enter into payment arrangements with consumers which it intended to later cancel, including with Plaintiff;

- Authorize its debt collectors to lure consumers into entering into payment arrangements by making false promises that the arrangement would be honored, including with Plaintiff;

- Authorize its debt collectors to lure consumers into payment arrangements so the consumer gains good standing, only to later cancel the arrangement, including with Plaintiff;

- Authorize its debt collectors to cause a consumer to materially influence a consumer's decision to pay a debt through false promises that the arrangement will be honored, including with Plaintiff;

14

- Authorizing its debt collectors to bait-and-switch consumers by offering payment arrangements and securing payment then failing to honor the terms of the arrangement, including with Plaintiff.

105.    It was unfair for Synchrony to:

- Cancel payment arrangements unilaterally and without cause, including with Plaintiff;

- Cancel payment arrangements of its agents unilaterally, including with Plaintiff;

- Cause its debt collectors to influence a consumer's decision to pay a debt based on false promises, including with Plaintiff;

- Influence a consumer's decision to pay a debt under false pretenses, including with Plaintiff;

- Authorize its debt collectors to enter into payment arrangement with consumers and then cause those debt collectors to unilaterally cancel the arrangement, including with Plaintiff;

- Cause its debt collectors to refuse to accept payments under an arrangement it authorized, including with Plaintiff;

- Fail to adequately communicate with a consumer regarding the unilateral termination of that consumer's payment arrangement, including with Plaintiff;

- Direct its debt collectors to violated the FDCPA, including with Plaintiff;

- Refuse to acknowledge or honor Plaintiff's Arrangement with Credit Solutions, including with Plaintiff;

- Causing Credit Solutions to enter into a bait-and-switch on the Arrangement.

106.    Synchrony's conduct was purposefully confusing, misleading and oppressive.

107.    Synchrony intended that Plaintiff rely on false statements and unfair actions because such statements and actions were made in Synchrony's official capacity as the owner of Plaintiff's Account and the party that caused Credit Solutions to terminate the Arrangement.

108.    Synchrony's conduct was willful, malicious, unfair and arbitrary.

109.    Synchrony's actions cause substantial injury to consumers generally because:

15

(1) Consumers reasonably expect their servicer's promises to be honored and their accounts to be properly managed;

(2) Consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their account;

(3) Consumers reasonable expect that large corporations will honor and respect federal regulations.

110.    All of Synchrony's conduct described herein occurred in the course of conduct involving trade or commerce.

111.    The foregoing conduct is part of a pattern and practice of behavior in which Synchrony routinely engages as part of its business model. Their normal business practices are designed to disregard the law through an agreement to subvert state and federal consumer protection laws, ignore the legal rights of indebted Illinois residents, and profit from wrongful collection actions that allow them to collect debts faster and more profitably.

112.    Defendant's practices offend public policy, have a direct consumer nexus, affect consumers as a whole, and violate the basic rights of Illinois consumers. These practices directly implicate consumer protection concerns because the conduct impacts and threatens consumers' rights and causes substantial emotional and financial harm to consumers by subverting legal protections afforded to Illinois residents.

113.    These practices are immoral, unethical, oppressive, and unscrupulous, and demonstrate an industry-wide practice of maximizing profits by intimidating consumers and ignoring consumers' legal rights.

114.    Synchrony is vicariously liable for the actions, conduct and misconduct of Credit Solutions as described herein.

115.    Plaintiff suffered damages as a result of Defendant's misconduct, including but not limited to harm to his credit reputation and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Synchrony as follows:

A.  Actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

B.  Reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

C.  Such other and further relief as the court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: November 14, 2022

Respectfully submitted,

By: /s/*Seth McCormick*
Seth McCormick

Seth McCormick
**Great Lakes Consumer Law Firm, LLC.**
73 W. Monroe St., Suite 100
Chicago, IL 60603
Tel 312-971-6787
Email: seth@glclf.com

Michael Wood
Celetha Chatman
Community Lawyers LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com
Cook County No. 60070

*Attorneys for Plaintiff*

# EXHIBIT A

Mar 22 2022 8:05pm    mr. mitchell                                    7733741894                    1



**2277 Thunderstick Dr Ste 400
Lexington KY 40505-9002**

| | |
|---|---|
| Date: | 03/17/2022 |
| Account Number: | |
| Amount Due: | $2,128.09 |

Dear Consumer,

Credit Solutions LLC is writing to inform you that as of March 21, 2022, we will no longer be servicing your Synchrony Bank regarding Allegro Credit account. After March 21, 2022, you will need to contact Synchrony Bank regarding Allegro Credit at 855-696-1236, to discuss your account or to make repayment arrangements.

All secured payment arrangements in place with Credit Solutions will be honored through July 18, 2022, as agreed. If you have any payment arrangements beyond this date, they will not be processed by Credit Solutions LLC. You will need to contact Synchrony Bank regarding Allegro Credit to make further payment arrangements beyond July 18, 2022.

Please direct all questions and inquiries to Synchrony Bank regarding Allegro Credit at 855-696-1236.

Best regards.

Credit Solutions, LLC

This communication is from a debt collector.



**DO NOT MAIL PAYMENT - For Undeliverable Mail Only**
c/o ACY Return Mail Processing
PO Box 29 Mooresville NC 28115-0029



**WILLIE MITCHELL**

▆▆▆▆▆▆▆▆▆▆▆▆

||ıı|ı||ı•ı|ı•ıɪıı||ɪ|ı•|ı|ı•||ı||ıь|•|ı||ı||ı•ı||ı|ı|

Chat Live Now @ www.cs-llc.com

1                                                                                          459

# EXHIBIT B

Firm No. 64641

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WILLIE MITCHELL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | CLASS ACTION |
| CREDIT SOLUTIONS, LLC; and SYNCHRONY BANK, | ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Willie Mitchell respectfully requests that the Court order that this action, alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), may proceed on behalf of a class against Defendant Credit Solutions, LLC ("Credit Solutions") and Defendant Synchrony Bank (together "Defendants").

The class consists of (1) all persons similarly situated in the State of Illinois (2) who entered into a payment arrangement with Credit Solutions for a Synchrony Bank account (3) who then received a letter substantially similar to that attached as Exhibit A which states "We will no longer be servicing your Synchrony Bank Allegro Credit Account" (4) sent between one year prior to the filing of this case up to the filing of this case.

Plaintiff is required to file a motion for class certification prior to any tender of payment by Defendants to ensure that Plaintiff's individual claims are not mooted, and Plaintiff may request

1

leave to supplement the motion at a later date. *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644 (2015).

In support of this motion, Plaintiff states as follows:

**<u>NATURE OF THE CASE</u>**

1.      Plaintiff is a natural person residing in Chicago, Illinois.

2.      Credit Solutions is a Kentucky limited liability company, engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts originally owed to others.

3.      On or about March 22, 2022, Credit Solutions sent a letter (the "Letter") to Plaintiff, a copy of which is attached hereto as <u>Appendix A</u>.

4.      The Letter conveyed various information regarding the debt directly to Plaintiff, including the amount owed, the identity of the original creditor, and an account number.

5.      The Letter stated in pertinent part,

> Credit Solutions LLC is writing to inform you that as of March 21, 2022, we will no longer be servicing your Synchrony Bank regarding Allegro Credit account. After March 21, 2022, you will need to contact Synchrony Bank regarding Allegro Credit…to discuss your account or to make repayment arrangements.
>
> All secured payment arrangements in place with Credit Solutions will be honored through July 18, 2022, as agreed.

(Appx A).

6.      In August 2020, Plaintiff made a payment arrangement regarding the Account with Credit Solutions.

7.      Plaintiff made payments for eight months prior to receiving the Letter.

2

8.      The Letter informs Plaintiff that Credit Solutions is no longer servicing Plaintiff's account as of March 2022 but will continue taking payments until July 2022. However, Credit Solutions website shows they are planning to take payments through 2023.

9.      Plaintiff entered into the payment arrangement with Credit Solutions to maintain good standing on the Account.

10.     By ending the arrangement and turning the account back over to Synchrony Financial, Plaintiff was no longer in good standing as of March 2022.

11.     Had Plaintiff know the arrangement was going to be cancelled, and that he would no longer be in good standing, he would not have entered into the arrangement.

12.     Credit Solutions threatened to take an action it could not take when it threatened to take payments from Plaintiff when it was no longer servicing the account, in violation of 15 U.S.C. §1692e(5).

13.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f, when it entered into a payment arrangement with Plaintiff and then proceeded to cancel the arrangement.

14.     Credit Solutions engaged in an unfair practice, in violation of 15 U.S.C. §1692f(2), when it failed to provide Plaintiff with notice prior to withdrawing payments.

## THE FAIR DEBT COLLECTION PRACTICE ACT

15.     The FDCPA is a broad, remedial statute that prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts.

16.     In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

3

debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

17.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

18.     To this end, the FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

19.     Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F. Supp. 2d 1035, 1042 (N.D. Ill. 2008).

20.     Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA.

21.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982).

4

## REQUIREMENTS FOR CLASS CERTIFICATION

22.     Illinois law allows for the maintenance of class actions when the following prerequisites are met:

> (1)     The class is so numerous that joinder of all members is impracticable.
>
> (2)     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3)     The representative parties will fairly and adequately protect the interest of the class.
>
> (4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801.

23.     The class action determination is to be made as soon as practicable after the commencement of an action brought as a class action and before any consideration of the merits. 735 ILCS 5/2-802.

24.     Decisions regarding class certification are left to the "sound discretion" of the circuit court and will be overturned only where the court clearly abuses that discretion or applied "impermissible legal criteria." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 126 (Ill. 2005).

25.     Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1004 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection . . . . [T]he consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action— private suits or governmental actions—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer

5

26.     Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. *See*, *e.g.*, *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999).

27.     As demonstrated below, each of the requirements for class certification is met.

**1.  <u>Numerosity</u>**

28.     Section 2-801 (1) parallels the language of Federal Rule of Civil Procedure 23(a)(1); therefore, federal case law is instructive on the numerosity requirements under the Illinois Rules. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990). The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *See Kulins v. Malco*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (19 and 47 members sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 members sufficient).

29.     It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Lit.*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y 19786). "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential to most cases in order to reach a class determination .... Where the exact size of the class is unknown, but it is general knowledge or

common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 NEWBERG ON CLASS ACTIONS (3d ed. 1995), §7.22.

30.     In the present case, Plaintiff alleges, based on the volume of Defendant's collection activity and the use of form letters, that there are more than 40 class members, making them so numerous that joinder is impracticable.

31.     While discovery will be needed to determine the precise class size, it is reasonable to infer that numerosity is satisfied. *See Wood River Area Dev. Corp.*, 198 Ill. App. 3d at 450 (concurring with a leading scholar's assertion that a class size of 40 clearly satisfies numerosity and that a class size of 25 likely satisfies numerosity); *Swiggett v. Watson*, 441 F.Supp. 254, 256 (D. Del. 1977) (an action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, the fact the Department of Motor Vehicles issued printed forms for such transfer was in of itself sufficient to show that the numerosity requirement was satisfied); *Westcott v. Califano*, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of).

## 2. Common Questions and Predominance

32.     A common question may be shown when the claims of the individual members of the class are based on the common application of a statute or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (1st Dist. 1992).

33. In the present case, the predominant common questions are (i) whether Defendants enter into payment arrangements with consumers only to later cancel them, (ii) whether such practices violate the FDCPA, and (iii) Defendants' liability for such violations.

34. Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

35. The only individual issue is the identification of the class members, a matter easily ascertainable from Defendants' files.

36. Questions readily answerable from a party's files do not present an obstacle to class certification. *See Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

### 3. Adequacy of Representation

37. The class action statute requires that the class representative provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the attorney for the class must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

38. Plaintiff has retained experienced counsel, as indicated on Appendix B, Appendix C, and Appendix D, which sets forth counsel's qualifications.

39. There are no conflicts between Plaintiff and the class members.

8

4. **Appropriateness of Class Action**

40.    Efficiency is the primary focus in determining whether the class action is an appropriate method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D 545 (N.D. Ill. 1972). It is proper for a court, in deciding this issue, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161,1165 (7th Cir.1974).

41.    In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights are being violated. In addition, the modest size of the claims makes it unlikely that consumers would be able to pay to retain counsel to protect their rights on an individual basis.

## CONCLUSION

42.    The Court should certify this action as a class action.

Respectfully submitted,

By: /s/*Seth McCormick*
    Seth McCormick

Seth McCormick
**Great Lakes Consumer Law Firm, LLC.**
73 W. Monroe St., Suite 100
Chicago, IL 60603
Tel 312-971-6787
Email: seth@glclf.com

Michael Wood
Celetha Chatman
Community Lawyers LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611

Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com
Cook County No. 60070

## **CERTIFICATE OF SERVICE**

I, Seth McCormick, I had this document placed for service with the complaint to the

following parties:

Credit Solutions, LLC.
c/o Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, Illinois 62703

Synchrony Financial
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, Delaware 19801.

/s/*Seth McCormick*
Seth McCormick

10

# APPENDIX A

Mar 22 2022 8:05pm     mr. mitchell                                                    7733741894                    1



2277 Thunderstick Dr Ste 400
Lexington KY  40505-9002

| Date: | 03/17/2022 |
| Account Number: | |
| Amount Due: | $2,128.09 |

Dear Consumer,

Credit Solutions LLC is writing to inform you that as of March 21, 2022, we will no longer be servicing your Synchrony Bank regarding Allegro Credit account. After March 21, 2022, you will need to contact Synchrony Bank regarding Allegro Credit at 855-696-1236, to discuss your account or to make repayment arrangements.

All secured payment arrangements in place with Credit Solutions will be honored through July 18, 2022, as agreed. If you have any payment arrangements beyond this date, they will not be processed by Credit Solutions LLC. You will need to contact Synchrony Bank regarding Allegro Credit to make further payment arrangements beyond July 18, 2022.

Please direct all questions and inquiries to Synchrony Bank regarding Allegro Credit at 855-696-1236.

Best regards.

Credit Solutions, LLC

This communication is from a debt collector.



DO NOT MAIL PAYMENT - For Undeliverable Mail Only
c/o ACY Return Mail Processing
PO Box 29 Mooresville NC 28115-0029



WILLIE MITCHELL

Chat Live Now @ www.cs-llc.com

459

# APPENDIX B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| WILLIE MITCHELL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | CLASS ACTION |
| CREDIT SOLUTIONS, LLC; and SYNCHRONY FINANCIAL | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## <u>DECLARATION OF CELETHA C. CHATMAN</u>

I, Celetha C. Chatman, Esq., being first duly sworn on oath, depose and state as follows:

1. I am one of the attorneys for the Plaintiff above named.

2. I am admitted to practice within the State Courts of Illinois as of November 5, 2015.

3. I am a member of the Bar of the United States District Court for the Northern District of Illinois.

4. I am member of the Bar of the Bankruptcy Court for the Northern District of Illinois.

5. I have significant experience in FDCPA litigation, which is the focus of my practice.

6. I am or have been counsel to more than 500 FDCPA cases in the Northern District.

1

7.     That the following is a sample of my FDCPA class actions:

*Zulku v. I.Q. Data Internatioanl, Inc.,* 19-cv-03675 (N. D. IL)
*Garret v. David B. Blaskovich P.C.*; 17-cv-0087 (N.D. IL).

Pursuant to 28 U.S.C. § 1746(2), I, Celetha C. Chatman, hereby declare under penalty of perjury that the foregoing is true and correct.


Dated:  April 22, 2022                                  /s/ *Celetha C. Chatman*                              
                                                        Celetha C. Chatman

Celetha C. Chatman
Community Lawyers, LLC
980 N. Michigan Avenue, Suite 1400
Chicago, IL 60611
Ph: 312.757.1880
fax: 312.265.3227
cchatman@communitylawyersgroup.com

# APPENDIX C

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| WILLIE MITCHELL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. |
| v. | ) ) | CLASS ACTION |
| | ) | |
| CREDIT SOLUTIONS, LLC; and SYNCHRONY FINANCIAL, | ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## <u>DECLARATION OF MICHAEL JACOB WOOD</u>

I, Michael Jacob Wood, being first duly sworn on oath, depose and state as follows:

1.      I am one of the attorneys for the Plaintiff above named.

2.      I am admitted to practice within the State Courts of Illinois as of May 1, 2014.

3.      I have substantial experience in FDCPA litigation and collection defense litigation, which are the focus of my practice.

4.      I am a member of the National Association of Consumer Advocates as of November 2011.

5.      I am or have been counsel to over 800 FDCPA cases in the Northern District.

6.      I am or have been counsel to more than 500 debt defense cases in the Circuit Court of Cook County.

7.      I have published and lectured on the Fair Debt Collection Practices Act. (e.g., Michael J. Wood, Abstention Doctrine and the Fair Debt Collection Practices Act, 89 Chi.-Kent.

L. Rev. 1191 (2014)).

8.      Class actions: I have certified several classes for settlement purposes in the

following cases: *Wingate v. Resurgence Capital, LLC*, 14-cv-7753 (N.D. Ill.); *Szczesniak v.*

*National Account Services*, 14-cv-10346 (N.D. Ill.); *Garret v. David B. Blaskovich P.C.*; 17-cv-

0087 (N.D. IL); *Zulku v. I.Q. Data Internatioanl, Inc.,* 19-cv-03675 (N.D. Ill.)


   Pursuant to 28 U.S.C. § 1746(2), I, Michael Jacob Wood, hereby declare under penalty

of perjury that the foregoing is true and correct.


Dated:  April 22, 2022                    /s/ *Michael Jacob Wood*_____
                                                            Michael Jacob Wood


Michael J. Wood
Community Lawyers LLC
980 N. Michigan Avenue, Suite 1400
Chicago, IL 60611
Ph: 312.757.1880
fax: 312.476.1383
mwood@communitylawyersgroup.com

# APPENDIX D

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| WILLIE MITCHELL, on behalf of<br>himself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | CLASS ACTION |
| | ) | |
| CREDIT SOLUTIONS, LLC; and<br>SYNCHRONY FINANCIAL, | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF SETH MCCORMICK</u>

I, Seth McCormick, being first duly sworn on oath, depose and state as follows:

1.      I am one of the attorneys for the Plaintiff above named.

2.      I have been admitted to the practice of law in the State of Illinois since November 2012.

3.      Prior to being admitted to the practice of law in the State of Illinois, I was admitted to practice law in the State of Texas. I have been admitted to the practice of law in the State of Texas since May 2004.

4.      I am admitted to practice in the United States District Courts for the Northern District of Illinois.

5.      I am also admitted to practice in the Seventh Circuit Court of Appeals, the Fifth Circuit Court of Appeals, and the Ninth Circuit Court of Appeals.

6.      I am a member of the National Association of Consumer Advocates since 2021.

7.     I graduated from South Texas College of Law *cum laude* in 2003. Thereafter I worked as an associate Hays, McConn, Rice & Pickering ("Hays McConn"). While at Hays McConn I primarily represented businesses in personal injury and commercial litigation disputes. I left Hays McConn in October 2007 and joined a real estate litigation boutique at Glenn K. Weichert, LLC, as an associate. At Weichert, I represented various types of landowners in real estate disputes cases, as well as other clients in general litigation.

8.     In October 2008, I left Weichert to join, Mosbacher Energy Co. as an oil & gas attorney and landman.

9.     In October 2009, I moved to Chicago, Illinois and held various short-term positions doing legal work on a short-term contract basis.

10.     In April 2012, I joined Brown Legal Advisors, LLC, as an associate and became a partner in the firm in 2014. At this firm, I represented (a) distressed debt investors in chapter 7 and chapter 11 proceedings around the country, (b) chapter 11 debtors in bankruptcy cases and related litigation, and (c) chapter 7 trustees in contested creditor litigation. I also provided consulting services to investment firms for investment opportunities that involved litigation and potential bankruptcy proceedings.

11.     In January 2015 I became the managing partner of Brown Legal Advisors and continued to operate the law firm until December 2019.

12.     In March 2020, I left Brown Legal Advisors to start my own firm, Great Lakes Consumer Law Firm, LLC, which focuses on consumer protection litigation.

13.     I have substantial experience in federal court litigation, financial litigation, bankruptcy litigation, FDCPA litigation, mortgage fraud litigation, and other consumer fraud litigation involving the banking and financial sector, which are the main focus of my practice.

2

14.     I have represented plaintiffs in dozens of FDCPA and other consumer protection cases.

Pursuant to 28 U.S.C. § 1746(2), I, Seth McCormick, hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 22, 2022                    /s/ *Seth McCormick*
                                            Seth McCormick

Seth McCormick
Great Lakes Consumer Law Firm, LLC
73 W. Monroe St., Suite 100
Chicago, IL 60603
P: (312) 971-6787
E: seth@glclf.com